## J. K. P. YEARY ET AL. V. MARTHA P. CRENSHAW ET AL.

Decided November 12, 1902.

1.—Ancient Instrument—Acted On by Grantee—Location and Survey.

Plaintiff, claiming under a transfer of the right to receive land from the government, as an ancient instrument, was entitled to the admission in evidence of a certified copy from the Land Office of the survey and field notes, together with the assignee's declaration that they were made for him as such assignee, in order to show that the ancient instrument had been acted on by him.

2.—Evidence—Location and Survey—Certified Copy—Registration in Proper County.

The land in controversy being in C. County and a transfer of the rights of the original grantee to receive land from the State sought to be proved by certified copy from the records of M. County, a Land Office copy of the survey and field notes was admissible to show that the location was made while the land lay in M. County and the transfer was properly recorded there at the time.

3.—Conveyance—Bond for Title.

Instrument assigning the grantor's right to receive land from the government construed and held to be a conveyance effective upon the location and patenting of the land, and not a mere contract to make title.

4.—Stale Demand—Adverse Claim.

The rights of a holder of the equitable title to land are not affected by the doctrine of stale demand until some act is done by the owner of the legal title repudiating the trust.

Appeal from the District Court of Coryell County. Tried below before Hon. W. J. Oxford.

*Owens Miller,* for appellants.

*McKinney & Hill,* for appellees.

FISHER, CHIEF JUSTICE.—Appellees, Martha P. Crenshaw, Sarah Walling, joined by her husband Jesse Walling, and F. G. Robertson, instituted this suit in the District Court of Coryell County on the 27th day of November, 1901, against the appellants J. K. P. Yeary and William Gressett and T. C. Moore, in trespass to try title to the James S. Butler survey of land in Coryell County, which is described in the petition by metes and bounds.

Appellants Yeary and Gressett answered jointly by plea of not guilty, stale demand, and limitation of ten years. The defendant T. C. Moore by his answer disclaimed any title or possession of land sued for.

The cause was tried before a jury on February 25, 1902, and under a peremptory instruction from the court, the jury returned a verdict in favor of T. C. Moore on his plea of disclaimer, and in favor of appellees for the land sued for as against appellants, and the court thereupon rendered judgment dismissing suit as to T. C. Moore, with judgment in his favor for costs, and also in favor of appellees as against appellants for title and possession of the land sued for.

We find the following facts: J. W. Parker died in 1863. The ap-

pellees, except F. G. Robertson, are his sole heirs. Appellee Robertson claims to own the interest of L. E. Parker, one of the wives of J. W. Parker. The appellant Yeary is an heir of Jas. S. Butler, who, it appears from the evidence, was in the State of Texas as early as 1835, if not before then, and was killed in San Antonio in 1848. He was a single man at the time of his death, and there is evidence to the effect that he was never married. The appellant Gressett is in possession of the land as a tenant of defendant Yeary. Appellant Yeary, through his tenant Gressett, first went into possession of the land in October, 1900. He testified upon the trial of the case, as follows: "I went into possession of the land last October one year ago, and I put the defendant W. T. Gressett in possession under lease about one year ago."

The trial was had on the 23d day of February, 1902. On the 2d day of November, 1854, patent to the land sued for, which is situated in Coryell County, was granted to James S. Butler, by virtue of certificate No. 2631-2732, issued by the Commissioner of the General Land Office on the 11th day of December, 1852, as a duplicate. The patent is for five labors of land, situated in Milam District, Coryell County.

The plaintiff offered and introduced in evidence a certified copy from the deed records of Montgomery County, Texas, of the following instrument:

"This witnesseth I have this day sold unto James W. Parker or his legal representatives all the donation that is now or may hereafter become due to me as a citizen of Texas. He the said ———— having paid me to my satisfaction for 'the same. The said James by himself or other representatives has full power to select, choose, survey or locate the same whenever he or they may see proper. I do irrevocably appoint him the said James or his legal representatives my true and lawful attorney in fact to transact, do and perform anything pertaining to the premises to secure the title of the said land to the said James or his representatives, be the same more or less. He or they has full power to ask and receive from any empresario or commissioner or other authorized authorities to issue land titles and receive the title in his own proper name and for his own proper use, and the said land empresario, commissioner or other authorities authorized to issue land titles is hereby fully authorized to issue the title in the name and for the use of the said James W. Parker or his other legal representatives. And I hereby divest myself of any claim upon the government of Texas for the only sole use and behoof of the said James. I bind myself to continue, be and remain and perform all the necessary personal requirements of the law, and if necessary to make any other title to the said James hereafter. I bind myself to do so for the full performance of the above, I bind myself in the full sum of ten thousand dollars.

"Given under my hand and seal this 23rd day of August, 1834.

his<br>"James + Butler.<br>mark.

"Witness: Samuel Frost, Robert Frost, Silas M. Parker, L. T. McPlumer."

Plaintiffs introduced date of acknowledgment of said instrument, to wit, May 30, 1838: "Recorder's office, 30 May, 1838. Then was the foregoing instrument filed for record and recorded in book 'B,' pages 64 and 65 on the above date of county records. Gwyn Morrison, Clerk and Recorder."

"The State of Texas, County of Montgomery. I, Appleton Gay, clerk of the County Court of Montgomery County, in the State of Texas, do hereby certify that the above and foregoing is a true and correct copy of the original taken from the records of said county in my keeping, and I further certify that the same was carefully copied by me from book 'B' pages 64 and 65 of said book, which is one of the books of record of said county in my keeping. Given under my hand and seal of office, on this the 10th day of November, A. D. 1853. Appleton Gay, Clk. of the County Court of Montgomery Co., Texas."

Recorded in deed records of Coryell County, Texas, volume 17, page 387, May 7, 1897.

Plaintiffs then read in evidence to the court only, a copy of survey and field notes made by J. H. Collard for J. W. Parker on May 18, 1830, and certified to by the Commissioner of the General Land Office of this State, which copy is in words as follows, to wit:

"May the 18th, 1838. Survey for James W. Parker, assignee of James S. Butler of six labors 795,417 square varas of land situated on Harmon's Creek, being a part of the quantity of land to which he is entitled by virtue of a certificate No. 352 issued by the Board of Land Commissioners for the county of Montgomery, beginning, &c. [here follows field notes not material to this statement of facts, and being quite lengthy are omitted] to the beginning. All the witness trees are marked thus, 'P.' There are to the best of my knowledge and belief, three labors of arable or temporal land and three labors 795,417 square varas of pasture land in this survey. J. H. Collard, Deputy Surveyor. L. D. Nixon, L. J. McPlumer, chainmen."

"I certify the above field notes to be a true copy taken from my field book. J. H. Collard, Dept. Surveyor."

"I, J. H. Collard, solemnly declare under oath of my office that the foregoing survey was executed according to law and made since the first day of February, last. Montgomery, August 3rd, 1838. J. H. Collard, Dept. Surveyor."

Plaintiff then read in evidence before the court only, a certified copy from the Commissioner of the General Land Office of the State, a declaration made in writing by Jas. W. Parker, which is in words and figures, to wit:

"I hereby certify that J. H. Collard, a deputy surveyor for the county of Montgomery has surveyed for me seven labors, 159,237 square varas of land, situated on Harmon's Creek, adjoining Jesse Parker and Benson

Bisenhoover's &c., surveys being a part of the quantity of land to which
I am entitled by virtue of a certificate No. 325 issued by the Board of
Land Commissioners for the county of Montgomery, to me as assignee
of James S. Butler, for one-third of a league of land. Given under my
hand, this 18th day of May, 1838. James W. Parker, Assn. of Jas. S.
Butler."

W. L. Hill, being sworn as a witness for plaintiffs, testified as fol-
lows, to wit:

"I am acquainted with Montgomery and Walker counties and with the
location of the territory described in the field notes and survey intro-
duced in evidence before the court as made by J. H. Collard on Har-
mon's Creek, and know that said creek is located in what was formerly
Montgomery County but now Walker County, Texas, and that the loca-
tion of said survey would be now in Walker County, originally a part of
Montgomery County."

Plaintiff then read in evidence a deed made by Mrs. L. E. Parker,
widow of J. W. Parker, to F. G. Robertson, conveying all of her interest
in the land sued for in this case to the said Robertson.

The only conclusion that can be reached from the facts is, that the
James Butler who executed the conveyance to Jas. W. Parker in 1834
is the same person that was killed in San Antonio in 1848, and to whom
the land was patented in 1854; and the conclusion can be reached from
the facts that the right or certificate upon which the patent was predi-
cated was and is the same intended to be conveyed by Butler to Parker
in his conveyance of the 23d of August, 1834.

Appellants' second assignment of error complains of the action of the
court in admitting in evidence the certified copy from the Land Office
of the survey and field notes made by J. H. Collard, deputy surveyor.
There was no error in this ruling. The plaintiffs assert title under
transfer executed by Butler to Parker in 1834 as an ancient instrument.
The record of the survey and the affidavit of Parker were admissible for
the purpose of showing that Parker had acted under the instrument
executed by Butler. The antiquity of this instrument, together with
the evidence showing that the claimant under it had acted upon it,
would admit it in evidence as an ancient instrument. Ammon v. Dyer,
78 Texas, 646, 649, 650. This survey was also admissible for the pur-
pose of showing that the ancient instrument had been recorded in the
proper county. This instrument was recorded in the land records of
Montgomery County on May 30, 1838. In Holmes v. Coryell, 58 Texas,
681, it is held that the certified copy of the record of a deed is admis-
sible in evidence as an ancient instrument, if the record is over thirty
years of age. To the same effect is Brown v. Simpson, 67 Texas, 231.
In Hancock v. Tram Lumber Company, 65 Texas, 233, it is held that
the copy of the record of a deed properly registered in the county where
the land is situated, may be admitted in evidence in any other county
where the title may be involved.

The Act of December 20, 1836, authorized the registration of instru-

ments concerning titles to land. It might be true that the instrument executed by Butler in 1834 would not be entiled to registration as a muniment of title to land prior to the time that the survey was made by Collard on May 18, 1838; but the fact that a survey was made at that time under the certificate called for in the transfer, would make that instrument a title to land, and entitle it to registration in the county where the land was situated. Therefore, the copy of the survey was admissible for the purpose of showing that the ancient instrument was entitled to registration in Montgomery County, the record of which, being over thirty years of age, would be admissible under the cases cited.

Our findings of fact, in effect, dispose of appellants' assignments of error as set out on pages 7, 8, and 9 of their brief. In our opinion, the instrument executed by Butler in 1834 is not a mere bond for title, but is an executed contract of sale or conveyance. Gaines v. Cotton, 49 Texas, 101; Owens v. New York and Texas Land Company, 32 S. W. Rep., 189. It is sufficiently certain in determining who is the grantor and the grantee named in the instrument; and it purports to convey whatever right Butler might be entitled to from the government at the time the instrument was executed. It clearly relates to his headright that he was then entitled to; and the conclusion to be reached from the facts is that this headright was finally merged into the patent issued in 1854.

If stale demand can be urged in a case of this character (New York and Texas Land Company v. Hyland, 8 Texas Civil Appeals, 601), we are clear that it does not arise under the facts of this case. If it could be conceded that an equitable title only was in the plaintiffs, and that the legal title was in the heirs of Butler by virtue of the patent, it would be held in trust for the equitable owners, and stale demand would not begin its operation until there was some act indicating a repudiation of the trust. Wilson v. Simpson, 80 Texas, 287; Robertson v. Du Bose, 76 Texas, 10. The only act of repudiation shown was the possession of Yeary, which began in 1900, a time too recent to be considered as having any bearing on the issue of stale demand.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*